1  Thomas E. Beck, Esq. (SBN 81557)
   **THE BECK LAW FIRM**
2  Post Office Box 101
   Los Alamitos, California 90720
3  Telephone: (562) 795-5835

4  Email: becklaw@earthlink.net

5  Attorney for Plaintiff

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  DONALD KUNSTT,                          )
                                            )
13           Plaintiff,                     )    **COMPLAINT FOR DAMAGES**
                                            )
14      vs.                                 )    1. Violation of Civil Rights
                                            )       (42 U.S.C. §1983)
15  COUNTY OF LOS ANGELES, Captain          )    2. *Monell* Claim
    TATIANA PLUNKETT, Commander             )       (42 U.S.C. §1983)
16  ELIER MOREJON, Chief PATRICK            )    3. Failure to Supervise
    JORDAN, Captain MICHAEL DAVIS,          )       (42 U.S.C. § 1983)
17  Commander KEVIN HERBERT, Chief          )    4. Negligence (Govt Code §
    JOANN SHARP, Chief JOSEPH               )       844.6(d))
18  DEMPSEY, DOES 1-20                      )    5. Negligence (Govt Code § 815.2)
                                            )    6. Banes Act Violations (Civ Code
19           Defendants.                    )       §§52.1, 43)
    _____)

20

21                                               **DEMAND FOR JURY TRIAL**

22

23                            **JURISDICTION**

24      1.   Jurisdiction of this court is invoked under 28 U.S.C. §§ 1343, (1), (2),

25  (3) and (4). This action at law for money damages arises under Title 42 U.S.C.

26  Section 1983 and the United States Constitution, the laws of the State of California

27  and common law principles to redress a deprivation under color of state law of

28  rights, privileges and immunities secured to Plaintiff by said statutes, and by the

1 Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

2

3 ## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

4 2. At all times herein mentioned, Plaintiff DONALD KNUSTT was an
5 African American male adult and resident of the County of Los Angeles.

6

7 3. At all times herein mentioned, Defendants Captain TATIANA
8 PLUNKETT, (PLUNKETT) Commander ELIER MOREJON, (MOREJOHN), Chief
9 PATRICK JORDAN (JORDAN), Captain MICHAEL DAVIS, (DAVIS)
10 Commander KEVIN HERBERT, (HERBERT), Chief JOANN SHARP, (SHARP)
11 Chief JOSEPH DEMPSEY (DEMPSEY) and DOES 1-20, inclusive and each of
12 them, were employees of the COUNTY OF LOS ANGELES, and LOS ANGELES
13 COUNTY SHERIFFS DEPARTMENT, assigned to oversight and management of
14 the Los Angeles County Sheriff's Custody Division, Men's Central Jail, (MCJ),
15 Inmate Reception Center (IRC) and North County Correctional Facility (NCCF) at
16 Wayside.

17

18 4. Defendant COUNTY OF LOS ANGELES (hereinafter referred to as
19 "COUNTY") is and at all times herein mentioned has been a public entity and an
20 incorporated county duly authorized and existing as such in and under the laws of
21 the State of California; and at all times herein mentioned, Defendant COUNTY has
22 possessed the power and authority to adopt policies and prescribe rules, regulations
23 and practices affecting the operation of the Los Angeles County Sheriffs
24 Department, (LASD) and particularly said Department's Custody Division,
25 Classification, Internal Investigations and Training and Personnel Divisions and
26 other operations and subdivisions presently unidentified to Plaintiff, and their tactics,
27 methods, practices, customs and usages related to internal investigations, personnel
28 supervision and records maintenance, the use and deployment of dangerous

1   weapons, the use of force, and powers of arrest by its rank and file.

2

3      5.    Plaintiff is informed and believes and thereon alleges that each of the

4   Defendants designated as a DOE is responsible in some manner for the events and

5   happenings herein referred to, and thereby proximately caused injuries and damages

6   as herein alleged. The true names and capacities of DOES 1 through 20, inclusive,

7   and each of them, are not now known to Plaintiff who therefore sues said Defendants

8   by such fictitious names and will be added to this action as provided by California

9   Code of Civil Procedure Section 484 and FRCP Rule 15.

10

11     6.    Defendants, and each of them, did the acts and omissions hereinafter

12   alleged in bad faith and with knowledge that their conduct violated well established

13   and settled law.

14

15     7.    On January 23, 2018 a subject identified as Rocco Martin Chavez

16   physically assaulted Plaintiff Kunstt with a deadly weapon in the City of West

17   Covina. Chavez was arrested and prosecuted for a violation of Penal Code §

18   245(a)(1) in the Los Angeles Superior Court Case in case Number KA118295 for a

19   violation of Penal Code § 245(a)(1). On July 5, 2018 Chavez was convicted of this

20   crime and sentenced to the custody of the Los Angeles County Sheriff to serve six

21   months in jail. Because Rocco Chavez posed a continuing threat to Plaintiff's safety

22   and well being, on June 26, 2018 the Superior Court pursuant to Penal Code §136.2

23   issued a protective order in Plaintiff's favor requiring Rocco Chavez to stay 100

24   yards away from Plaintiff for 3 years. The clerk of the Superior Court uploaded the

25   sentence and stay away order to the California DOJ, CLETS and LASD data bases

26   that same day. Chavez was remanded and housed at North County Correctional

27   Facility (NCCF) to serve his sentence.

28        On or about September 7, 2018 Plaintiff was himself arrested by the West

3

1  Covina Police Department on a weapons possession charge and on September 9,
2  2018 brought to the Inmate Reception Center (IRC) of the Los Angeles County Jail,
3  operated by the Los Angeles County Sheriffs Department at which time Plaintiff
4  began notifying Does 1-10, each on-duty jail employees, deputies and custody
5  assistants, that Rocco Chavez was in their custody and that Plaintiff had a judicial
6  restraining order against Chavez, asking to not be housed anywhere near Rocco
7  Chavez fearing for his life and safety. For reasons yet to be discovered, Plaintiff was
8  received by the jail and thereby came under the control of defendants Captain
9  TTIANA PLUNKETT, Commander ELIER MOREJON AND Chief PATRICK
10 JORDAN, and given booking number 5399360, but not properly classified as a K-2
11 (white wristband with blue stripes) which would insure Plaintiff be kept away from
12 Chavez while the two were in custody of the Sheriff at the same time. Plaintiff was
13 temporarily housed at the Men's Central Jail (MJC) block 9200, "Charlie" row and
14 thereupon informed he was being transported to Wayside and NCCF where Chavez
15 was also known by Plaintiff to be housed. Plaintiff again repeatedly informed jail
16 employees, DOE 1-10, of his fears of being harmed or killed by Chavez and of the
17 court order Plaintiff had against Chavez which could be confirmed by researching
18 CLETS , other DOJ and LASD data bases available to jail employees when classified
19 as an inmate into the County jail. All of these requests and notifications were to no
20 avail. Plaintiff was not properly classified but instead, placed on a transportation bus
21 to NCCF. Plaintiff continued to inform LASD jail employees, deputies and custody
22 assistants (Does 10-15) of the stay away order and the threat Chavez posed to
23 Plaintiff's safety. His pleas and notifications continued not to be heeded. At NCCF,
24 plaintiff continued to implore anyone who would listen, including LASD jail
25 employees, deputies and custody assistants (Does 16-20) that he had a reason to be
26 classified as a stay away and thereby segregated from Chavez for his own protection
27 and that Chavez was known to be housed at NCCF while serving his sentence for the
28 January 23, 2018 assault against Plaintiff.

4

1    Despite his continuous and numerous pleas and communications to LASD
2  personnel while at NCCF and thereby under the control of defendants Captain
3  MICHAEL DAVIS, Commander KEVIN HERBERT and Chief JOANN SHARP,
4  Plaintiff was not segregated from Chavez and Chavez was not kept away from
5  Plaintiff. Within hours of the two seeing one another at NCCF Dorm 425, on
6  September 11, 2018 Chavez and a cohort inmate Oswaldo Solarez twice brutally
7  assaulted Plaintiff causing serious injuries, including breaking Plaintiff's nose,
8  causing head, face and other permanent injuries to plaintiff's vision. NCCF deputies
9  rescued Plaintiff from Chavez and Solarez and transported Plaintiff to an infirmary
10  and from there to Queen of the Valley Hospital in Santa Clarita. At that time Sheriffs
11  Department investigators and employees finally came to recognize Plaintiff's mis-
12  classification. Upon plaintiff's medical discharge he was ultimately classified as a
13  K-2 and briefly housed at MCJ Dorm 2400 and then Super Max Dorm 619 at NCCF
14  until his release 10-11-18. Rocco Chavez and Oswaldo Solarez were charged by the
15  Santa Clarita District Attorneys office under Superior Court case number 8SC04919
16  and convicted for their assaults against Plaintiff at NCCF. Another 3 year restraining
17  order issued in Plaintiff's favor from that conviction.

18

19    8. Shortly after Plaintiff's release from custody, Plaintiff filed a complaint
20  with the Sheriffs Department relating to the wrongful behavior of the jail employees
21  that disregarded a valid court order, enabled Chavez to attack Plaintiff and cause his
22  injuries. Plaintiff is informed and believes a self serving biased investigation was
23  undertaken, and contrary to Penal Code section 832.7 plaintiff was never notified of
24  the disposition of his complaint.

25

26    9.    No official involved in the wrongful misconduct against plaintiff has
27  ever been held responsible or accountable in any manner. All of the aforesaid
28  misconduct was undertaken pursuant to LASD custom, practice and usage.

1

2

## FIRST CAUSE OF ACTION

## (VIOLATION OF 4th, 5th and 14th AMENDMENT RIGHTS,- 42 U.S.C. § 1983)

## (By Plaintiff Against All Individual Defendants and DOES 1-20)

10.    Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 9 of this complaint, and by this reference incorporate the same herein and make each a part hereof.

11.    This action at law for money damages arises under Title 42 U.S.C. § 1983 and the United States Constitution, the laws of the State of California and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiffs by said statutes, and by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

12.    Commencing at or about the aforementioned dates and places, and while acting under color of law, Defendants Captain TATIANA PLUNKETT, Commander ELIER MOREJON, Chief PATRICK JORDAN, Captain MICHAEL DAVIS, Commander KEVIN HERBERT, Chief JOANN SHARP, Chief JOSEPH DEMPSEY and DOES 1-20 intentionally deprived Plaintiff of rights guaranteed to him by the Fourth, Fifth and 14th Amendments by denying him due process and assuring his safety and well being while in the custody and control of the Sheriff of the County of Los Angeles as an unconvicted inmate awaiting trial.

13.    Defendants, and each of them, jointly and severally carried out and perpetrated acts and omissions which operated to deprive Plaintiff of his constitutional rights by individually participating in an unlawful,  corrupt and

1  collusive effort to deny plaintiff the protections afforded him by the order of the
2  Superior Court of the County of Los Angeles against prospective assaults by Rocco
3  Chavez by failing to acknowledge Plaintiff's reports of the threat Chavez posed, of
4  the existence of a restraining order that could readily be corroborated by
5  Classification personnel and by housing Plaintiff and Rocco Chavez together at
6  NCCF which guaranteed, facilitated and enabled Chavez to attack and injure
7  Plaintiff a second time against the protections of the Superior Court's stay away
8  order.

9

10       14.   As a proximate result of the aforesaid acts and omissions of Defendants,
11  and each of them, Plaintiff sustained special and general damages cognizable by law
12  and in accordance with proof at trial.

13

14       15.   By reason of the aforementioned acts and omissions of Defendants, and
15  each of them, Plaintiff incurred medical and other compensable expenses in an
16  amount as proved.

17

18       16.   By reason of the aforementioned acts of Defendants, and each of them,
19  Plaintiff was compelled to secure the services of an attorney at law to redress the
20  wrongs hereinbefore mentioned and by virtue thereof, Plaintiff is indebted and liable
21  for attorneys fees.

22

23       17.   The aforementioned acts and omissions of Defendants were committed
24  by each of them knowingly, wilfully and maliciously, with the intent to harm, injure,
25  vex, harass and oppress Plaintiff by a conscious disregard of Plaintiffs constitutional
26  rights and by reason thereof, Plaintiff seeks punitive and exemplary damages from
27  Defendants, and each of them, (except Defendant COUNTY) in an amount as
28  proved.

7

## SECOND CAUSE OF ACTION

## (UNLAWFUL CUSTOM AND PRACTICE UNDER SECTION 1983)

### (By Plaintiff Against Defendant County)

18.    Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 17 of this complaint, and by this reference incorporate the same herein and make each a part hereof.

19.    Defendant COUNTY is and at all times herein mentioned has been a public entity and an incorporated municipality duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant COUNTY, possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the Los Angeles County Sheriffs Department and its tactics, methods, practices, customs and usages related to the operation of its jails, internal investigations, personnel supervision and records maintenance, and the proper uses of force by its rank and file, generally.

20.    At all times herein mentioned, Defendants, and each of them, were employees acting under the COUNTY'S direction and control, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the First, Fourth, Fifth, Eighth and Fourteenth Amendments respectively to the United States Constitution, which customs, policies, practices and usages at all times herein mentioned turned a blind eye to repeated violence and homicides in the jails and created an atmosphere in the County jails of heightened danger, diminished personal safety and which resulted in and encouraged the employment, deployment and retention of persons as peace officers who have demonstrated their brutality, dishonesty, bigotry, and  numerous other serious abuses of their powers as peace officers in the employment of the COUNTY and LASD.

8

21.    Defendant COUNTY knowingly maintains and permits official *sub-rosa* policies or customs of permitting the occurrence of the kinds of wrongs set forth above, by deliberate indifference to widespread police abuses, failing and refusing to impartially investigate, discipline or prosecute peace officers who commit acts of felonious dishonesty and crimes of violence, each ratified and approved by COUNTY and LASD.

22.    At all times mentioned, Defendant COLA, Captain TATIANA PLUNKETT, Commander ELIER MOREJON, Chief PATRICK JORDAN, Captain MICHAEL DAVIS, Commander KEVIN HERBERT, Chief JOANN SHARP, Chief JOSEPH DEMPSEY, DOES 1-20 and each of them, maintained customs, practices and usages that posed a substantial risk of serious harm or death to inmates in Plaintiff's' circumstances and each defendant knew that the following customs and practices posed intolerable risks of harm:

(1) Improper classification and housing of inmates;

(2) inadequate supervision and training of custody assistants and deputy personnel to provide reasonable security to inmates;

(3) failure to provide reasonable security and/or prevent abuse of inmates by other inmates;

(4) failure to supervise, investigate or take corrective action in incidents of failure to provide reasonable security resulting in inmate on inmate violence and death;

(5) condoning lax supervision of deputy misconduct, unconstitutional conduct and/or dereliction of duty;

(6) condoning lax supervision by supervisors who fail to report or investigate employees wrongful, unconstitutional conduct, dereliction of duty and failure to provide reasonable security to inmates;

(7) condoning lax supervision by line supervisors who fail to report or act on

1   employees wrongful conduct toward inmates;

2       (8) ratifying wrongful conduct by employees what resulted in serious injuries
3   and death of inmates by failing to direct and implement corrective action to prevent
4   repetition of wrongful conduct by employees against inmates;

5       (9) failure to implement competent and appropriate policies and procedures
6   regarding supervision of gates and control of gates;

7       (10) failure to enforce policies and procedures regarding the use and
8   designation of inmate trustees;

9       (11) failure to implement policies and procedures for the appropriate
10   designation of inmate workers as trustees; and

11      (12) failure to comply with policies and procedures related to the inmate
12   identification.

13

14      23.    Defendant COUNTY and LASD fostered and encouraged an
15   atmosphere of lawlessness, corruption, abuse and misconduct, which by September
16   7, 2018 and  thereafter, represented the unconstitutional policies, practices and
17   customs of the COUNTY and LASD. Moreover, the Citizen's Commission on Jail
18   Violence appointed by the County of Los Angeles Board of Supervisors to
19   investigate and report on the failings identified in subparagraphs 1-12 of paragraph
20   22 above, made adverse findings of the aforesaid shortcomings in its publication of
21   September 2012 (http://ccjv.lacounty.gov) which findings proximately caused the
22   harm suffered by Plaintiff.

23

24      24.    By reason of the aforesaid policies, customs, practices and usages,
25   plaintiffs' rights under the Fourth, Fifth and Fourteenth Amendments to the United
26   States Constitution were deprived.

27

28

# THIRD CAUSE OF ACTION

## (FAILURE TO TRAIN AND SUPERVISE)

**(By Plaintiff Against Defendants Captain TATIANA PLUNKETT, Commander ELIER MOREJON, Chief PATRICK JORDAN, Captain MICHAEL DAVIS, Commander KEVIN HERBERT, Chief JOANN SHARP, Chief JOSEPH DEMPSEY DOES 1-20 in their individual capacities)**

25.   Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 24 of this complaint, and by this reference incorporate the same herein and make each a part hereof.

26.   Defendants Captain TATIANA PLUNKETT, Commander ELIER MOREJON, Chief PATRICK JORDAN, Captain MICHAEL DAVIS, Commander KEVIN HERBERT, Chief JOANN SHARP, Chief JOSEPH DEMPSEY and DOES 1-20 are sued in their individual capacities. Said defendants knew or reasonably should have known of their subordinates ongoing constitutional violations set forth above in the administration of the Custody Division, IRC, MCJ, NCCF sections thereof. Specifically, defendants knew or should have known of repeated failures to properly classify inmates, failures to abide by court ordered stay away orders, failures to provide reasonable security at the jail, failures to prevent inmate on inmate violence, failures to monitor known violent inmates, failures to investigate by subordinate supervisors and failures to oversee the competent use of inmates as trustees. Said failures to act to prevent constitutional misconduct by subordinates acquiesed, condoned and ratified the customs, practices and usages by subordinates.

27.   Defendants, and each of them, are sued for their own culpable actions and omissions in the training, supervision and control of subordinates including watch commanders and first level supervision at the jails which actions demonstrated a reckless and callous indifference to the rights of inmates such as plaintiff Donald Kunstt. Said defendants' actions, inactions and deliberate indifference  set into

11

1   motion the ultimate harm to plaintiff.

2

3       28.    Plaintiff is informed and believes and thereon alleges that prior to the
4   incident complained of herein in September 2018, and as early as 1997, defendants
5   DOES 1-20 and others charged with the administration of the Custody Division
6   knew or reasonably should have known that employees of the Los Angeles County
7   Sheriffs Department committed similar acts of dereliction of duty, deliberate
8   indifference to employee dishonesty and the failures to properly provide reasonable
9   security to inmates from one another which are the proximate cause of Plaintiff's
10  damages.

11

12      29.    Plaintiff is informed and believes and thereon alleges that prior to the
13  incident complained of herein in September 2018, and as early as 1997, defendants
14  DOES 1-20 and others charged with the administration of the Custody Division
15  failed to take corrective action to prevent the failure to properly provide reasonable
16  security to inmates from one another which are the proximate cause of Plaintiff's
17  damages.

18

19      30.    Beginning in June 1996, the United States Justice Department initiated
20  its inquiry into the conditions and operation of the Los Angeles County custodial
21  factilities. On September 5, 1997, the DOJ gave former Los Angeles County Sheriff
22  Leroy BACA clear and unmistakable notice of constitutionally deficient jail
23  conditions, reporting its findings of continued and serious patterns of constitutional
24  violations, abuses of inmates by LASD employees and the deliberate indifference to
25  inmate upon inmate violence and deaths. Sheriff BACA was at that time a supervisor
26  for LASD and and member of LASD's Executive Council by which BACA reviewed
27  the DOJ's findings and conclusions related to the mismangement of the Custody
28  Division, particularly the Men's Central Jail.

31.     Defendants DOES 1-20 had personal and/or constructive knowledge of the ongoing deaths and injuries in the County jails and were put on notice of deaths and injuries in the jails by Special Counsel and the Office of Independent Review informing the County and former Sheriff BACA of customs, patterns and practices by Custody Division employees of deliberate indifference to the constitutional rights of inmates about which the County, Sheriff and DOES 1-20 took no meaningful corrective action to address the widespread and well settled practices within the Custody Division by disciplining, terminating, prosecuting or otherwise addressing subordinates engaged in violence against inmates and preventable inmate against inmate violence.

32.     Defendants County and Former Sheriff BACA along with DOES 1-20 delegated to subordinates and/or to the Office of Independent Review his non-delegable duty to supervise and hold his subordinates accountable and failed to undertake any meaningful corrective action in the face of knowledge and notice of ongoing constitutional violations within the Custody Division.

33.     In 1999, under the threat of litigation against the Sheriff and County of Los Angeles by the United States Department of Justice, former Sheriff BACA and the County of Los Angeles submitted to a Memorandum of Understanding (MOU) with the Department of Justice designed to curb the pattern and practice of jail abuses and constitutional violations which required former Sheriff BACA and the County to recognize, address and remedy manifestly dangerous conditions in the Custody Division.  Former Sheriff BACA personally executed the MOU and represented he would insure compliance therewith by the Los Angeles County Sheriffs Department. Notwithstanding said representations, in 2006 after years of DOJ monitoring compliance with the MOU, the DOJ issued a report publicizing BACA's and the COUNTY's continued failure and refusal to correct the

1 unconstitutional pattern and practices still existing in the Custody Division. BACA
2 and RHAMBO were recipients of the 2006 DOJ "progress" report" and continued
3 to refuse to require the institution of polices and procedures designed to abate
4 widespread abuses within the Custody Division.

5

6     34.    On July 6, 2002, inmate Ramon Gavira was severely beaten by a female
7 LASD deputy and was killed in his cell. In the investigation into that fatality,
8 deputies and jail staff testified that they had not been subjected to an investigation
9 or disciplined for lapses in supervision of Gavira nor for the physical abuse to which
10 LASD employees subjected Gavira in custody. Former Sheriff BACA was personally
11 advised of these employee admissions and took no action of any kind to discipline,
12 reprimand or prosecute any responsible employees.

13

14     35.    On March 22, 2003, former Sheriff BACA was made aware Hispanic
15 inmate gangs were attacking African American inmates and failed to provide
16 reasonable security  for such inmates from one another. By that reason, inmates
17 Ahmad Burrel, Rory Fontanelle and Aaron Cunningham were violently assaulted
18 and injured by fellow inmates. Despite this knowledge, former Sheriff BACA and
19 County took no corrective or remedial action to address the obvious issues.

20

21     36. On October 21, 2003 inmate Ki Hong was killed by inmates while in
22 custody. Former Sheriff BACA was alerted to serious deficiencies by subordinates
23 leading to the death of Hong. Former Sheriff BACA did nothing to address the
24 circumstances brought to his attention and Hong's homicide became the first of 5
25 more inmate on inmate homicides in the next six months.

26

27     37.    On December 6, 2003 inmate Prendergast was violently attacked by
28 fellow inmates over several hours. Former Sheriff BACA was notified that deputy

1 and supervisory personnel on duty during the period had failed to prevent the
2 violence, violated multiple rules designed to prevent such incidents and were derelict
3 in their duties. Former Sheriff BACA failed to cause the discipline or prosecution of
4 any responsible jail employee.

5

6   38.   On December 9, 2003 inmate Mario Alvarado, aka Victor Cortez was
7 murdered by inmates while in custody of the Los Angeles County Sheriffs
8 Department. Assailants were left without oversight or supervision for sufficient time
9 to conceal Alvarado's body. Investigation reported to former Sheriff BACA of this
10 homicide resulted in no discipline or prosecutions of employees found to have
11 violated numerous violations.

12

13   39.   On December 13, 2003, and LASD deputies falsified the contents of
14 Jose Beas reports. Beas had allegedly admitted to crimes against a minor calling for
15 stay away classification but Beas was put into general population where inmates
16 predictably attacked Beas with extreme severity, causing brain damage. Former
17 Sheriff BACA and County knew of the incident, approved a civil settlement thereof
18 and failed to hold any employee responsible for their wrongful misconduct leading
19 to Beas' assault.

20

21   40.   On January 12, 2004, inmate Kristopher Faye was killed by inmates in
22 the custody of former Sheriff BACA and the County of Los Angeles. Deputies
23 responsible for keeping cell gates closed failed to do so and thereby facilitated the
24 homicide against LASD rules and regulations. Inmates with recognized propensities
25 to violence, such as Rocco Chavez in this case, were housed with non violent
26 inmates. Former Sheriff BACA was made aware of the inmate misclassifications and
27 housing and took no action to discipline or prosecute any miscreant employee.
28 Similar, if not identical, homicides continued to take place in the jails.

15

1

2    41.    On April 20, 2004, inmate Raul Tinjero was murdered in his cell by
3  inmate Santiago Pineda. Pineda had a known history of violence in the jails which
4  was ignored by jail personnel who allowed Pineda to kill Tinjero from whom he was
5  required to be separated. Misconduct by jail employees were identified with respect
6  to security, classification and oversight of Pineda. Former Sheriff BACA and County
7  were notified of these circumstances and failed to take any appropriate measures
8  against any of the jail employees responsible.

9

10    42.    On May 23, 2004 inmate Antonio Fernandez was killed by other
11  inmates while in custody in the Los Angeles County jail. The homicide investigation
12  disclosed the deputy assigned to monitor Fernandez's dormitory abandoned her post
13  during which time the killing took place. These failures by jail employees were
14  reported to former Sheriff BACA and the County who took no remedial, disciplinary
15  or prosecutorial action against his subordinates that caused the death of Fernandez.

16

17    43.    Foreshadowing the assault of Plaintiff September 11,2018 Special
18  Counsel Merrick Bobb presented former Sheriff BACA and County a finding of
19  inmate abuse and publically reported that the County jail is "understaffed, riddled
20  with security flaws that jeopardizes the lives of guards and inmates." Bobb's report
21  criticized the jail for failing to prevent dangerous inmates from being housed with
22  lower-risk inmates, that the jails suffer from "lax supervision and long-standing jail
23  culture that has shortchanged accountability for inmate safety and security" about
24  which BACA, and his Custody Division command staff did nothing.

25

26    44.    In February 2005 BACA was notified by Special Counsel Merrick Bobb
27  that the Sheriffs Department and County were costing millions of dollars annually
28  for misconduct that neither former sheriff BACA nor his subordinates had found no

wrongdoing and no responsible employee was disciplined or prosecuted.

45.     On October 24, 2005 inmate Chadwick Shane Cochran was booked and in custody for a non violent misdemeanor and housed in the mental health facility of the jail. On November 16, 2005 Chadwick was erroneously housed in the general population wearing a red identification bracelet which resulted in his being beaten to death by other inmates. No deputy responsible for the misclassification nor of the abandonment of their posts which facilitated the homicide or the failure to intervene resulted in remedial or disciplinary action.

46.     The Office of Independent Review (OIR), acting as special counsel to former Sheriff BACA in 2007 notified BACA deputies continued to abandon their jail posts, slept on the job, failed to follow protocols, failed to conduct timely security checks, fraudulently doctored jail records to misrepresent timely security checks, left inmates unsupervised, and facilitated inmate upon inmate violence. Former Sheriff BACA and County took no action against any of the offending employees.

47. In 2011, the ACLU issued a report to former sheriff BACA advising him of widespread abuses and violence in the jails.

48.     In September 2012, the Report on the Citizens Commission on Jail Violence found former sheriff BACA's and County's oversight of the jails had proven over the years to be abysmal, noting his repeated failures to attend to repeated notifications that preventable violence was not being abated and no measures were being taken to insure the safety of inmates from one another or from deputy personnel. The Commission specifically found "The Sheriff failed to monitor and control the use of force in Los Angeles County jails"; that "LASD senior

17

1  management failed to investigate the excessive uses of force problems at Mens
2  Central Jail" and faulted former Assistant Sheriff RHAMBO for mis-managment of
3  the jails along with his failure to hold employees responsible for violations
4  accountable.

5

6     49.    As the result of the supervisor Defendants and former sheriff BACA's
7  actions and omissions, the institutional repudiation of constitutional protections
8  became the moving force behind the attack by Chavez against the plaintiff.

9

10            **FOURTH CAUSE OF ACTION**
11         **(NEGLIGENCE-CA GOVT CODE § 844.6(d))**
12   **(By Plaintiff Against Defendants Captain TATIANA PLUNKETT,**
13   **Commander ELIER MOREJON, Chief PATRICK JORDAN, Captain**
14   **MICHAEL DAVIS, Commander KEVIN HERBERT, Chief JOANN**
15   **SHARP, Chief JOSEPH DEMPSEY DOES 1-20 in their individual**
16                  **capacities)**

17     50.    Plaintiff refers to and repleads each and every allegation contained in
18  paragraphs 1 through 49 of this complaint, and by this reference incorporate the
19  same herein and make each a part hereof.

20

21     51.    Plaintiff timely filed his claim for damages pursuant to California
22  Government Code § 910 et. seq. on 2/5/19 under file number 19-1149457*001.
23  Notice of rejection of said claim was given to Plaintiff by mail 3/19/19 by Latasha
24  Corry, Senior Associate County Counsel General Litigation Division, Los
25  Angeles County Counsel.  This action is timely filed.

26

27     52. On or about September 9 and 11, 2018 while in Defendants' custody,
28  Plaintiff was mis classified in contravention of a valid and verifiable judicial

18

1 restraining order and housed together with the restrained inmate, Rocco Chavez.
2 As the consequence of said negligence, plaintiff was savagely attacked, beaten,
3 hospitalized and injured.

4

5 53. LASD deputies, custody assistants, employees and/or supervisors, all
6 individual and Doe defendants herein, agents, servants and/or employees of
7 County and within the course and scope of such agency and under color of
8 authority, were negligent as regards to plaintiff's health, safety and welfare and
9 breached that duty of care.

10

11 54. As a result of said negligence, plaintiff was damaged as alleged herein.

12

13 **FIFTH CAUSE OF ACTION**

14 **(NEGLIGENCE CA GOVT CODE § 812.2)**

15 **(By Plaintiff Against Defendant COUNTY and DOES 1-20 in their individual**
16 **capacities)**

17 55. Plaintiff refers to and repleads each and every allegation contained in
18 paragraphs 1 through 54 of this complaint, and by this reference incorporate the
19 same herein and make each a part hereof.

20

21 56. On or about September 9 and 11, 2018 while in Defendants' custody,
22 Plaintiff was mis classified in contravention of a judicial restraining order and
23 housed together with the restrained inmate, Rocco Chavez. As the consequence of
24 said negligence, plaintiff was savagely attacked, beaten, hospitalized and injured.
25

26 57. LASD deputies, custody assistants, employees and/or supervisors, all
27 individual and Doe defendants herein, agents, servants and/or employees of
28 County and within the course and scope of such agency and under color of

19

1  authority, were negligent as regards to plaintiff's health, safety and welfare and
2  breached that duty of care.

3

4      58. As a result of said negligence, plaintiff was damaged as alleged herein.

5

6                      **SIXTH CAUSE OF ACTION**

7                   **(BANES ACT CIVIL CODE §§ 52.1, 43)**

8  **(By Plaintiff Against Defendant COUNTY and DOES 1-20 in their individual**
9  **capacities)**

10     59. The United States Constitution Amendment IV, the California
11 Constitution Art. 1, § 13, and California Civil Code § 43 guarantee the right of
12 persons to be free from excessive force and inmate on inmate violence while in
13 custody. Defendants, by engaging in the conduct, acts and omissions herein
14 alleged, denied these right to plaintiff by threats, intimidation and/or coersion,
15 thus giving rise to this claim under California Civil Code §52.1

16

17     60. As a direct and proximate result of the aformentioned acts and
18 omissions by DOES 1-20, plaintiff was injured and damaged as set forth herein,
19 and is thereby entitled to statutory damages under California Civil Code § 52, as
20 well as compensatory and punitive damages according to proof.

21

22     61. LASD deputies, custody assistants, employees and/or supervisors, all
23 individual and DOE defendants herein, agents, servants and/or employees of
24 County and within the course and scope of such agency and under color of
25 authority, were intentionally and deliberately indifferent to plaintiff's health,
26 safety and welfare and breached that duty of care.

27

28     62. In doing the aforesaid wrongful acts, the individual and DOE
   defendants, and each of them, acted in a reckless and callous disregard of the

                                   20

1  constitutional and statutory rights of the plaintiff. The wrongful acts, and each of

2  them, were willful, oppressive, fraudulent, malicious, thus warranting the

3  imposition of exemplary damages (except to Defendant County) in an adequate

4  amount to punish and deter future misconduct. .

5                                    **PRAYER**

6        WHEREFORE, Plaintiff prays judgment against Defendants and

7  each of them, as follows:

8        AS TO EACH CAUSE OF ACTION AS APPLICABLE

9        1.      For General damages according to proof;

10       2.      For Special damages according to proof;

11       3.      For Punitive damages as provided by law, in an amount to be proved

12               against each individual Defendant;

13       4.      For statutory damages as provided by law

14       5.      For attorney's fees pursuant to 42 U.S.C § 1988 and CC § 52.1(h);

15       6.      For Costs of suit;

16       7.      For such other and further relief as the Court may deem proper.

17  DATED:      August 25, 2019            **THE BECK LAW FIRM**

18

19                                    By_____

20                                         Thomas E. Beck
                                           Attorneys for Plaintiff

21

22                          **PLAINTIFF'S JURY DEMAND**

23       Plaintiff hereby demand trial by jury.

24  DATED: August 25, 2019                 **THE BECK LAW FIRM**

25

26                                    By_____

27                                         Thomas E. Beck
                                           Attorneys for Plaintiff

28

                                         21